No. 10-12261-A

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

KEREN PETERS, individually
and on behalf of all others similarly situated,

Plaintiff – Appellee,

v.

THE KEYES COMPANY,

Defendant – Appellant.

_____

On Interlocutory Appeal from the United States District Court
For The Southern District of Florida
Case No. 10-60162-CV-Altonaga Brown

## ANSWER BRIEF OF PLAINTIFF-APPELLEE

**FARMER, JAFFE, WEISSING,**
**EDWARDS, FISTOS & LEHRMAN, P.L.**
STEVEN R. JAFFE
Florida Bar No. 390770
MARK S. FISTOS
Florida Bar No. 909191
SETH LEHRMAN
Florida Bar No. 132896
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone:  954-524-2820
Facsimile: 954-524-2822
*Counsel for Plaintiff - Appellee*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Plaintiff - Appellee, KEREN PETERS, individually and on behalf of all others similarly situated, Class Members, hereby identifies the following persons and entities that have an interest in the outcome of this Appeal:

1. Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L.

2. Steven R. Jaffe, Esq.

3. Mark S. Fistos, Esq.

4. Seth Lehrman, Esq.

5. Friedlander & Kamelhair, P.L.

6. Bruce D. Friedlander, Esq.

7. The Barthet Firm

8. John C. Hanson, II

9. Keren Peters

10. The Keyes Corporation

11. The Honorable Cecilia Altonaga

12. U.S. Magistrate Judge Stephen T. Brown

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .................................................................. ii, iii

TABLE OF AUTHORITIES ...................................................... iv, v, vi

STATEMENT REGARDING ORAL ARGUMENT ............................................ 1

I.     COUNTERSTATEMENT OF THE ISSUES ............................................... 2

    A.     Contract Interpretation ...................................................... 2

    B.     Third Party Beneficiary ...................................................... 2

II.    STATEMENT REGARDING CITATIONS AND REFERENCES ............. 3

III.   COUNTERSTATEMENT OF THE CASE AND FACTS ........................... 4

    A.     Nature of Underlying Case .................................................. 4

    B.     The Arbitration Clause ...................................................... 5

    C.     The District Court's Ruling .................................................. 7

IV.    SUMMARY OF ARGUMENT .................................................... 9

V.     ARGUMENT ........................................................................... 10

    A.     Keyes Misconstrues General Arbitration Law and Policy................. 12

        1.     Courts Favor Arbitration Only to the Extent of the
              Parties' Agreement................................................ 12

      2.    State Rules of Contract Interpretation Support the District Court's Decision ...................................................................... 13

    B.    Keyes Is Not a Third Party Beneficiary ........................................... 17

          1.    *Kassin* and *Century Land Development* are On Point ............. 18

          2.    Keyes Does Not Satisfy the Requirements for Status as a Third Party Beneficiary............................................................ 23

VI.    CONCLUSION ............................................................................................ 26

CERTIFICATE OF COMPLIANCE .................................................................... 27

CERTIFICATE OF SERVICE ............................................................................. 27

# TABLE OF AUTHORITIES

## CASES

*Aberthaw Const. Co. v. Centre County Hospital*, 366 F. Supp 513, 515 (M.D. Pa. 1973) ................................................................................................................14

*American Express Financial Advisors, Inc. v. Makarewicz*, 122 F. 3d 936, 940 (11th Cir. 1999).......................................................................................... 13, 14

*Becker v. Davis*, 491 F. 3d 1292 (11th Cir. 2007) ...................................................11

*Burns v. Barfield*, 732 So. 2d 1202, 1205 (Fla. 4th DCA 1999) .............................15

*Century Land Development, L.P., et al., v. F.F.L. Development, L.L.C.*, Case No. 07-14377-CIV-MOORE ............................................................................. *passim*

*Chastain v. Carroll*, 307 So.2d 491, 492 (Fla. 2d DCA 1975)................................25

*Citigroup, Inc. v. Amodio*, 894 So. 2d 296, 298 (Fla. 4th DCA 2005)............. 12, 14

*City of Tampa v. Thornton-Tomasetti, P.C.*, 646 So.2d 279, 282-83 (Fla. 2d DCA 1994) ................................................................................................................24

*EEOC v. Waffle House Inc.*, 534 U.S. 279, 289 (2002)...........................................14

*First Options of Chicago, Inc. v. Kaplan*,  514 U.S. 938, 943(U.S. 1995) .............13

*Florida Power & Light Co. v. Road Rock, Inc.*, 920 So.2d 201, 203 (Fla. 4th DCA 2006) ................................................................................................................24

*Gold Coast Media, Inc. v. Meltzer*, 751 So. 2d 645, 646 (Fla. 3d DCA 2000) .......17

*Hunt Ridge at Tall Pines Inc. v. Hall*, 766 So. 2d 399, 400 (Fla. 2d DCA 2000)...24

*International Bullion and Metal Brokers, Inc. v. West Pointe Land, LLC*, 846 So.2d 1276, 1277 (Fla. 4th DCA 2003) ........................................................................17

*Kel Homes, LLC v. Burns*, 933 So. 2d 699, 703 (Fla. 2d DCA 2006)....................16

*Keyes Co. v. Moscarella*, 223 So.2d 83 (Fla. 3d DCA 1969).................................25

*Klay v. All Defendants*, 389 F.3d 1191, 1195 (11th Cir. 2004) ..............................15

*Management Computer Controls, Inc. v. Charles Perry Const., Inc*., 743 So.2d 627, 632 (Fla. 1st DCA 1999)...............................................................................12

*McPheeters v. McGinn, Smith and Co., Inc.*,  953 F.2d 771, 773 (2d Cir. 1992) ...25

*MS Dealer Service Corp. v. Franklin*, 177 F. 3d 942 (11th Cir. 1999)...................11

*Nestler-Poletto Realty, Inc. v. Kassin*, 730 So.2d 324 (Fla. 4th DCA1999) ... *passim*

*Networkip, LLC v. Spread Enterprises, Inc.*,  922 So.2d 355, 358 (Fla. 3d DCA 2006) ..................................................................................................................24

*Orion Ins. Co. v. Magnetic Imaging Systems I*, 696 So.2d 475 (Fla. 3d DCA 1997) ............................................................................................................ 18, 19

*Rebman v. Follett Higher Educ. Group, Inc.*,  248 F.R.D. 624, 630 (M.D. Fla. 2008) .................................................................................................................24

*Roe v. Amica Mutual Insurance Company*, 533 So. 2d 279 (Fla. 1988) .................12

*Seaboard Coast Line Railroad Co. v. Trailer Train Co.*, 690 F. 2d 1343, 1348 (11th Cir. 1982)...............................................................................................13

*Seifert v. U.S. Home Corp.*, 750 So.2d 633, 640 (Fla.1999) ........................... 12, 14

*Sprint Corp. v. Telimagine, Inc.*, 923 So.2d 525, 527 (Fla. 2d DCA 2005)............16

*Tartell v. Chera*, 668 So.2d 1105, 1106 (Fla. 4th DCA1996) ...............................21

*Technicable Video Systems, Inc. v. Americable of Greater Miami, Ltd.*, 479 So.2d 810 (Fla. 3d DCA 1985) ......................................................................................11

*Volt Info. Scis. Inc. v. Stanford Univ.*, 489 U.S. 468, 478-79 (1989) .............. 12, 13

*Wilson v. Waverlee Homes, Inc.*, 954 F. Supp. 1530, 1533 (M.D. Al. 1997) .........13

## STATUTES

Federal Arbitration Act, 9 U.S.C. § 2 et seq. .........................................................12

Florida's Deceptive and Unfair Trade Practices Act, §§501.201, et seq. ...............11

Real Estate Settlement Procedures Act of 1974, §§ 8(b), 12 U.S.C. §§ 2607(b) ........................................................................................................ 5, 11

## STATEMENT REGARDING ORAL ARGUMENT

Appellee does not believe that oral argument is necessary. The issues are straightforward and the applicable law is well established. If the Court does schedule oral argument, Appellee respectfully requests the opportunity to participate.

# I.    COUNTERSTATEMENT OF THE ISSUES

**A.    Contract Interpretation**.    Florida and federal law favor arbitration only to the extent a contracting party has agreed to arbitrate a dispute. The arbitration clause specifies that the buyer (Appellee) and seller, the parties to the real-estate purchase contract, agree to resolve their disputes through arbitration. Appellant (the seller's real estate broker) was neither a signatory, nor a party to the purchase contract.  Did the District Court erroneously deny Appellant's motion to compel Appellee to arbitrate her statutory claims against Appellant?

**B.    Third Party Beneficiary.**    Although merely a broker to the transaction, Appellant contends it has a contractual right to enforce the arbitration clause as a third party beneficiary.  A third party beneficiary must show a contract was intended specifically, directly, and primarily for his or her benefit.  Here, the contract is intended to protect Appellee (buyer) and the seller in their real estate transaction and the arbitration clause it contains is expressly limited to disputes between those contracting parties.    Did the District Court erroneously find Appellant was not a third party beneficiary who could enforce the arbitration clause?

## II.    STATEMENT REGARDING CITATIONS AND REFERENCES

Appellant-Defendant will be referred to throughout this brief as "Keyes." Appellee-Plaintiff will be referred to as "Peters."   The United States District Court will be referred to as the "District Court."

The symbol "[DE__]" denotes the pertinent docket entry in the District Court's record.  The citation "[DE at ___]" indicates the stamped page number appearing at the top right corner of the docketed material.  The citation "[DE n _]" refers to a footnote in the docketed filing.

Keyes filed an Appendix ("Appendix") with tabs corresponding to docket entry numbers in the District Court's docket.    Citations to docketed material appearing in the Appendix will state the Appendix tab number and the docket entry and page number.   Relevant docketed materials which do not appear in the Appendix (*e.g.,* the order in *Century Land Development, L.P., et al., v. F.F.L. Development, L.L.C.*, Case No. 07-14377-CIV-MOORE upon which the District Court relied in denying arbitration, DE 23) will be cited by docket entry number as stated above.

## III.    COUNTERSTATEMENT OF THE CASE AND FACTS

This appeal presents a straightforward question of who has right to compel arbitration under the terms of an arbitration clause ("Arbitration Clause") contained in a buyer and seller's contract for the sale of real estate ("Purchase Contract").

**A.    Nature of the Underlying Case.**    According to Peters' Complaint [DE 1], Keyes is a real estate broker which systematically imposed in addition to its regular commission a flat "administrative brokerage fee" on real estate buyers including Peters and other consumers at their real estate closings [Appendix Tab 1, DE 1 at ¶¶ 1-2,10, 17, 23-24, 27, 30, 32; Appendix Tab 14, DE 14 at 3].    The "administrative brokerage fee" was referenced in the Purchase Contract and Buyer's Disclosure which Peters (but not Keyes) signed [Appendix Tab 1; DE 1 (Ex. A) at ¶ 21 and DE 1(Ex. C) (referring to a "Professional Services Fee")]. Peters does not name the seller as a defendant or allege that the seller committed any wrongdoing alone or in concert with anyone [Appendix Tab 1, DE 1, *passim*]. Peters does not allege that Purchase Contract or Buyer's Disclosure was breached, that the "administrative brokerage fee" itself was not disclosed, or that Keyes or anyone else violated a duty owed to her under the Purchase Contract [*Id.*].    Peters complains that Keyes's flat "administrative brokerage fee" violates statutory duties

owed to Peters and the Class—namely, that the fee is unearned, duplicates Keyes's commission, and/or bears no reasonable relationship to any real-estate settlement services actually performed by Keyes for closing on Peters' mortgage loan [Appendix Tab 1; DE 1 at ¶ 3].  As a result, Peters avers Keyes violated the Real Estate Settlement Procedures Act of 1974, §§ 8(b), 12 U.S.C. §§ 2607(b) ("RESPA"), RESPA regulations, and the "Florida Deceptive and Unfair Trade Practices Act," Chapter 501, Part II, *Fla. Stat.* ("FDUTPA") [Appendix Tab 1; DE 1 at ¶¶ 4, 50-67].

**B.    The Arbitration Clause.**    The Arbitration Clause at issue is contained in the Purchase Contract Peters signed with the seller [Appendix Tab 1, DE 1 (Ex. A) at ¶ 16; Appendix Tab 22, DE 22 at 6; Appendix Tab 27, DE 27 at 1-2].  Peters also signed a "Buyer's Disclosure" which states that the buyer "agrees to pay The Keyes Company a professional services fee of $499.00 at closing" [Appendix Tab 1, DE 1 (Ex. C)].  However, the Buyer's Disclosure form contains no arbitration provision and no provision incorporating the Purchase Contract [*Id.*].

The Arbitration Clause of the Purchase Contract specifies that "Buyer and Seller," referred to as the "parties" to the agreement, agree to arbitrate their disputes as follows:

16. DISPUTE RESOLUTION: This Contract will be construed under Florida law. All controversies, claims and other matters in question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:

(a) Disputes concerning entitlement to deposits made and agreed to be made: . . . .

(b) All other disputes: ***Buyer and Seller* will have 30 days from the date *a dispute arises between them* to attempt to resolve the matter through mediation, *failing which the parties will resolve the dispute through neutral binding arbitration in the county where the Property is located.* . . . Any disputes with a real estate licensee or firm named in Paragraph 19 will be submitted to arbitration only if the licensee's broker consents in writing to become a party to the proceeding**. This clause shall survive closing.

(c) Mediation and Arbitration; Expenses: . . . .

[Appendix Tab 1, DE 1 (Ex. A) at ¶ 1 (defining "Seller" and "Buyer") and at ¶16

(the Arbitration Clause) (emphasis added)].   Based on the foregoing Arbitration

Clause, Keyes moved to compel arbitration of Peters' claims based, among other

things, on state and federal policies favoring arbitration and the breadth of the

reference in the above-quoted ¶ 16 to matters "arising out of or relating to this

transaction or this [Purchase] Contract." [Appendix Tab 14, DE 14 at 4-6].   Peters

filed a response [Appendix Tab 22, DE 22] and Keyes replied arguing it was a

third party beneficiary of the Purchase Contract [Appendix Tab 26, DE 26 at 4-7].

It is reply, Keyes "concede[d] that if it [wa]s not an intended third party beneficiary to the Purchase Contract, it d[id] not have any right to compel arbitration" [Appendix Tab 26, DE 26 at 7].

      **C.**    **The District Court's Ruling.**    The District Court denied Keyes's motion to compel arbitration in a decision issued April 21, 2010 [Appendix Tab 27, DE 27]. In its decision, the District Court examined the instances where the Purchase Contract mentioned the broker (Keyes) and the text of the above-quoted Arbitration Clause [Appendix Tab 27, DE 27 at 2]. The District Court found that the Purchase Contract only allowed the "Buyer and Seller" to compel arbitration and that Keyes was not a third party beneficiary of the Purchase Contract [*Id*. at 3-5].

      In reaching its decision, the District Court relied primarily on two opinions in which courts previously interpreted nearly identical arbitration provisions under Florida law and had denied a broker's request to compel arbitration: *Nestler-Poletto Realty, Inc. v. Kassin*, 730 So.2d 324 (Fla. 4th DCA1999) [Appendix Tab 27, DE 27 at 3-4] and *Century Land Development, L.P., et al., v. F.F.L. Development, L.L.C*., Case No. 07-14377-CIV-MOORE (S.D. Fl. Feb. 19, 2008) [Appendix Tab 27, DE 27 at 4-5]; *see* DE 23 (where *Century Land Development* appears in the District Court's docket). Based on *Kassin* and *Century Land*

*Development*, the District Court discerned that the text in the Arbitration Clause providing that "[a]ny disputes with a real estate licensee or firm . . . will be submitted to arbitration only if the licensee's broker consents in writing to become a party to the proceeding" merely protects Keyes from arbitration against its will [Appendix Tab 27, DE 27 at 4-5]. The District Court further found that the first sentence of ¶16 (b) of the Arbitration Clause quoted above authorizes only "Buyer and Seller" to arbitrate this case and thus afforded Keyes no "independent right to compel arbitration" [Appendix Tab 27, DE 27 at 5]. As for Keyes' contention it was a third party beneficiary, the District Court concluded:

> That the Purchase Contract briefly mentions the broker's rights in six paragraphs — out of twenty-one — does not mean the Purchase Contract exists primarily and directly to benefit The Keyes Company. In addition, the Purchase Contract envisions the parties signed separate brokerage agreements. *Cf. Century Land Dev.*, No. 07-14377-CIV-MOORE, at *4 (noting the broker's principal contract would be its listing agreement or some equivalent). Except as a broker, The Keyes Company is "purely an incidental participant" in the Purchase Contract. *Kassin*, 730 So. 2d at 326.

[Appendix Tab 27, DE 27 at 5].

On May 13, 2010, Keyes filed its Notice of Interlocutory Appeal of the District Court's decision denying Keyes's Motion to Compel Arbitration and Stay Action [DE 31]. This appeal ensued.

## IV.  SUMMARY OF ARGUMENT

Keyes offers three flawed rationales for why the District Court should be reversed: (1) judicial policy favoring arbitration; (2) reference in the Arbitration Clause to arbitration of matters "arising out of or relating to" the transaction or contract; and (3) Keyes's purported status as third party beneficiary to the Purchase Contract.

Judicial policy favoring arbitration does not warrant overlooking the precise terms parties have chosen to fashion and limit their agreement to arbitrate.  Keyes focuses on the Arbitration Clause's text concerning the types of matters subject to arbitration (*i.e.*—"[a]ll controversies"), but Keyes fails to discuss what the contracting parties have specifically agreed about *who* is authorized resolve their disputes through binding arbitration.   In this case, the terms of the Arbitration Clause at issue unambiguously specify that the "Buyer" (Peters) and her "Seller," as parties to the real-estate Purchase Contract, agree to resolve *their* (*i.e.*—the contracting parties') disputes through arbitration.  Keyes was neither a signatory, nor by its own admission, a party to the Purchase Contract.   Therefore, Keyes cannot compel Peters to arbitrate her dispute.

Likewise, Keyes cannot claim third-party-beneficiary status regarding the Purchase Contract, especially under the Arbitration Clause.   Under Florida law, a

putative third party beneficiary must show that a contract was intended specifically, directly, and primarily for his or her benefit. Here, the Purchase Contract is specifically and primarily intended to convey real estate and protect buyers and the sellers in their real estate transactions, not primarily to confer on Keyes a $499 "administrative brokerage fee." Keyes's relationship to the underlying transaction was only incidental; it served as transaction broker, which had separate commission arrangements with contracting parties. The plain language of the Arbitration Clause specifies that the right to arbitrate accrues only to contracting parties which Keyes is not. Based on the nature and express terms of the Purchase Contract, including the Arbitration Clause, Keyes cannot therefore be a third party beneficiary entitled to compel Peters to arbitrate. The District Court's denial of Keyes's arbitration motion should be affirmed.

## V.    ARGUMENT

Keyes offers three rationales for why the District Court should be reversed: (1) judicial policy favoring arbitration [Appellant's Br. 22-24]; (2) reference in the Arbitration Clause to arbitration of matters "arising out of or relating to" the transaction or contract [Appellant's Br. 20-22, 24-26]; and (3) Keyes's purported status as third party beneficiary to the Purchase Contract [Appellant's Br. 25-30]. All three contentions are misplaced because they are all based on a flawed premise:

That the Arbitration Clause allows Keyes, as a non-party broker to the Purchase Contract, to compel arbitration when the Arbitration Clause by its express terms is limited to the contracting parties.

Keyes cites a series of cases expanding arbitration clauses to nonparties, none of which is apposite. For example, in *MS Dealer Service Corp. v. Franklin*, 177 F. 3d 942 (11th Cir. 1999) [Appellant's Br. 23] this Court extended party status to a nonparty under an arbitration provision because the underlying suit alleged that a signatory and non-signatory had engaged in concerted misconduct, including fraud. *MS Dealer* at 945, 947. Peters, though, alleges no misconduct or wrongdoing by the seller and she has not named the seller as a defendant. Also, unlike *Becker v. Davis*, 491 F. 3d 1292 (11th Cir. 2007) [Appellant's Br. 11] and *Technicable Video Systems, Inc. v. Americable of Greater Miami, Ltd*. 479 So.2d 810 (Fla. 3d DCA 1985) [Appellant's Br. 25-26], Peters does not allege that the Purchase Contract or Buyer's Disclosure was breached, that the "administrative brokerage fee" itself was not disclosed, or that Keyes or anyone else violated a duty owed to her under the Purchase Contract or the Buyer's Disclosure. Peters' claims are only statutory: she complains that Keyes's flat "administrative brokerage fee" violated RESPA and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), which are statutory duties Keyes owes to the public

and do not arise from the Purchase Contract. *See Seifert v. U.S. Home Corp.,* 750 So.2d 633, 640 (Fla.1999) (determining "[i]f…the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties, then a dispute regarding such a breach is not one arising from the contract"); *Management Computer Controls, Inc. v. Charles Perry Const., Inc.* 743 So.2d 627, 632 (Fla. 1st DCA 1999) (noting FDUTPA claims are independent and do not arise out of contracts).

### A.     Keyes Misconstrues General Arbitration Law and Policy

### 1.     Courts Favor Arbitration Only to the Extent of the Parties' Agreement.

Although Keyes correctly points out that Florida courts and federal courts have expressed a policy favoring arbitration, *see Roe v. Amica Mutual Insurance Company,* 533 So. 2d 279 (Fla. 1988), Keyes ignores that Florida and "[f]ederal law favor[] arbitration only as to issues the parties have actually agreed to arbitrate." *Citigroup, Inc. v. Amodio*, 894 So. 2d 296, 298 (Fla. 4th DCA 2005) (citing *Volt Info. Scis. Inc. v. Stanford Univ.*, 489 U.S. 468, 478-79 (1989). This Court has found that the Federal Arbitration Act, 9 U.S.C. § 2, *et seq.* ("FAA") neither prevents parties who do agree to arbitrate from limiting "by contract the issues which they will arbitrate," nor compels them to arbitrate matters to which they have not agreed. *American Express Financial Advisors, Inc. v. Makarewicz,*

122 F. 3d 936, 940 (11th Cir. 1999); *see Seaboard Coast Line Railroad Co. v. Trailer Train Co*., 690 F. 2d 1343, 1348 (11th Cir. 1982). Indeed, the "primary purpose" of the FAA, which Keyes invokes here,[1] is to ensure "that private agreements to arbitrate are enforced according to their terms." *Wilson v. Waverlee Homes, Inc*., 954 F. Supp. 1530, 1533 (M.D. Al. 1997) (quoting *Volt,* 489 U.S. 468, 479); *accord First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943(U.S. 1995) (finding "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration").

2.      **State Rules of Contract Interpretation Support the District Court's Decision**.  Whether parties have agreed to arbitrate a particular issue and the construction of the language of the arbitration agreement are determined under ordinary state-law principles.  *American Express*, 122 F. 3d at 940 (citation omitted); *Seaboard Coast Line*, 690 F. 2d at 1348.  In this case, the Arbitration Clause states it is to be interpreted under Florida law [Appendix Tab 1, DE 1 (Ex. A) at ¶ 16; Appendix Tab 27, DE 27 at 2].  Under Florida and federal law and arbitration policy, the language of arbitration provisions determines their scope and

---

[1] Appellant's Br. 23-24.

their plain language should be followed. *Citigroup, Inc.,* 894 So. 2d at 298 (citing *EEOC v. Waffle House Inc*., 534 U.S. 279, 289 (2002)); *American Express*, 122 F. 3d at 940 (citations omitted). According to the Florida Supreme Court, "the determination of whether an arbitration clause requires arbitration of a particular dispute necessarily 'rests on the intent of the parties.'" *Seifert*, 750 So.2d 633, 636. "Florida's general contract law requires that the court discern the intent of the parties from the language used in their agreement." *Citigroup, Inc.,* 894 So. 2d at 298 (citations omitted) (collecting cases).

Keyes focuses solely on the Arbitration Clause's text concerning of the types of matters subject to arbitration (*i.e.*—"[a]ll controversies, claims and other matters in question arising out of or relating to this transaction or this Contract or its breach"),[2] but Keyes fails to discuss what the contracting parties have specifically agreed about *who* must resolve their disputes through binding arbitration.[3] Even "broad arbitration clauses cannot be extended to compel parties to arbitrate disputes they have not agreed to arbitrate*." Klay v. All Defendants,* 389 F.3d 1191,

---

[2] Appellant's Br. 20-22, 24-26.

[3] This distinguishes the current case from the cases Keyes cites like *Aberthaw Const. Co. v. Centre County Hospital*, 366 F. Supp 513, 515 (M.D. Pa. 1973) [Appellant's Br. 25] where the court's decision turned on the breath of the contract's language regarding the subjects which may arbitrated.

1195 (11th Cir. 2004).  The plain language of Arbitration Clause indicates that the contracting parties intended the right to arbitrate disputes was between "Buyers and Sellers" who were "parties" to the Purchase Contract.  Accordingly, in pertinent part, the Arbitration Clause specifically and expressly provides that: "**Buyer and Seller** will have 30 days from the date a dispute arises **between them, to attempt to resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration in the county where the property is located**." [Appendix Tab 1, DE 1 (Ex. A) at ¶ 1 (defining "Seller" and "Buyer") and at ¶16 (the Arbitration Clause) (emphasis added)].

In this case, Keyes is a not a signatory to the Purchase Contract which contains the Arbitration Clause and not a signatory to the Buyers Disclosure which refers to the "administrative brokerage fee" (a/k/a "professional services fee") [Appendix Tab 1, DE 1, Ex. A and Ex. C; Appendix Tab 27, DE 27 at 1].  Nor is Keyes a buyer or seller in the underlying real estate transaction or party to the Purchase Contract or the Arbitration Clause.<sup>4</sup>  Keyes is simply a broker.  If the contracting parties had intended a broker or other non-party to have a contractual

---

<sup>4</sup>  *See Burns v. Barfield*, 732 So. 2d 1202, 1205 (Fla. 4th DCA 1999) (by definition a "third party" is not a party); Appendix Tab 1, DE 1, Ex. A and Ex. C; *cf.* Appendix Tab 26, DE 26 at 7 (Keyes conceding "that if it [wa]s not an intended third party beneficiary to the Purchase Contract, it d[id] not have any right to compel arbitration").

right to compel them to arbitrate "[a]ll controversies, claims and other matters in question arising out of or relating to" their Purchase Agreement, then they would have not limited their arbitration agreement to disputes between "Buyers and Sellers." Under ordinary rules of contract interpretation, the parties' specification that "Buyers and Sellers" have the right to arbitrate disputes demonstrates they did not intend the right to arbitrate to extend to nonparties, including brokers. *See Sprint Corp. v. Telimagine, Inc.*, 923 So.2d 525, 527 (Fla. 2d DCA 2005) (noting "a fundamental principle of contract construction is that the expression of one thing is the exclusion of the other"); *cf. Kel Homes, LLC v. Burns*, 933 So. 2d 699, 703 (Fla. 2d DCA 2006) (stating the "general principle of contract interpretation that a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject").

Moreover, "[g]rammatical construction of contracts generally requires that a relative or qualifying phrase be construed as referring to its nearest antecedent."[5] *Gold Coast Media, Inc. v. Meltzer*, 751 So. 2d 645, 646 (Fla. 3d DCA 2000). The

---

[5] The last antecedent is the "last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 47.33 (7th ed.2007).

antecedent of "parties [who] will resolve the dispute through neutral binding arbitration" is "them" and "Buyer and Seller" which further confirms the interpretation that the contracting parties limited the right to arbitrate to the "Buyer and Seller" neither of which is the broker Keyes.

Also, even if Keyes were a third party beneficiary, the precise language of the arbitration clause controls [Appellant's Br. 25-30] (Keyes arguing third party beneficiary status).  Under Florida law, a third party beneficiary of the contract cannot arbitrate a dispute when the specific terms of the arbitration clause indicate nonparties are not authorized to arbitrate with a party. *See International Bullion and Metal Brokers, Inc. v. West Pointe Land, LLC,* 846 So.2d 1276, 1277 (Fla. 4th DCA 2003).  Therefore, as stated above, given that the plain text of the Arbitration Clause states only that Buyers and Sellers must arbitrate, even if Keyes were a third party beneficiary of the Purchase Contract (which it is not), as a nonparty broker it is still not authorized under the plain text of the Arbitration Clause to compel contracting parties like Peters to arbitrate.

### B.      Keyes Is Not a Third Party Beneficiary

Moreover, assuming for the sake of argument that Keyes's status as a putative third-party-beneficiary was relevant Keyes's construction of Florida case law does not support its contentions.

For example, Keyes discusses *Orion Ins. Co. v. Magnetic Imaging Systems I*, 696 So.2d 475 (Fla. 3d DCA 1997) for several pages [Appellant's Br. 26-27]. Keyes contends *Orion* supports its claim to third party beneficiary status because the court in *Orion* determined "that an entity which had not signed nor, in fact, was even named or identified in a contract between two parties was nevertheless an intended third party beneficiary and therefore bound by the arbitration provision of the contract" [Appellant's Br. 26]. Keyes's reliance on *Orion* is misplaced. The nonparty in *Orion* was an insured's assignee and medical provider and in that capacity was specifically named among the class of persons covered under an arbitration clause: the clause in *Orion* expressly stated that disputes between the insurance company *and any "medical services or supplies provider...who ha[d] agreed to accept an assignment... [would] be decided by arbitration* upon written request of either party." *Orion*, 696 So.2d at 478 (emphasis added).

### 1.   *Kassin* and *Century Land Development* are on Point.

Keyes's attempt to cast doubt on the import and relevance of *Nestler-Poletto Realty, Inc. v. Kassin*, 730 So.2d 324 (Fla. 4th DCA1999) [Appellant's Br. 27-29] and  *Century Land Development, L.P., et al., v. F.F.L. Development, L.L.C.*, Case No. 07-14377-CIV-MOORE (S.D. Fl. Feb. 19, 2008) [DE 23] [Appellant's Br. 30] upon which the District Court relied is equally unavailing.

Keyes states that *Nestler-Poletto Realty, Inc. v. Kassin*, 730 So.2d 324 (Fla. 4th DCA1999) is not helpful because the court does not mention what "any other contract terms may have been or whether any other rights were conferred on broker in the rest of the contract" [Appellant's Br. 28]. But, Keyes focuses on what the *Kassin* court did not say rather what it did say about a broker's incidental status *vis-à-vis* a real estate purchase involving a very similar arbitration provision. In all material respects, *Kassin* is on point.

The plaintiff in *Kassin* sued real estate brokers regarding a failed real estate transaction. The underlying transaction in *Kassin* was a "residential sale and purchase contract" not an agreement with a broker. 730 So.2d at 325. The *Kassin* contract contained an arbitration provision nearly identical in material respects with the one at issue in the instant case, and as here the *Kassin* real estate brokers moved to compel arbitration [*Id*. at 325].

Like the District Court [Appendix Tab 27, DE 27 at 5], the *Kassin* court found "the [real estate purchase] contract provided in its paragraph 16 that as for all disputes other than those concerning deposits, ***buyer and seller*** will resolve disputes by mediation, and failing that, by neutral binding arbitration" [*Id*. at 325] (emphasis added) [*compare* Appendix Tab 1, DE 1 (Ex. A) at ¶ 16]. The arbitration clause in *Kassin* also provided in the same paragraph 16 that "[a]ny

19

disputes with a real estate licensee ... will be submitted to arbitration only if the licensee's broker consents in writing to become a party to the proceeding'" *Kassin* at 325 [*compare* Appendix Tab 1, DE 1, Ex. A at ¶ 16(b); Appendix Tab 27, DE 27 at 5]. The *Kassin* court affirmed the trial court's denial of the real estate brokers' motion to compel arbitration and upheld the trial court's determination that "the arbitration clause in the subject contract compelled arbitration only as to the buyer and seller, and that with respect to the broker, it only precluded the broker from being forced into arbitration without the broker's consent." *Kassin* at 325.

The *Kassin* court also rejected the real estate brokers' arguments that they were third party beneficiaries to the underlying real estate contract [*Id*. at 626]. In doing so, it found "[the broker] Appellants' rights under this contract were limited to their role as broker…[and that] [t]he broker was regarded as a party to the contract only as to the brokerage clause, and was otherwise purely an incidental participant." [*Id*.; *compare* Appendix Tab 1, Ex. A at ¶ 19]; *see Tartell v. Chera,* 668 So.2d 1105, 1106 (Fla. 4th DCA1996) (finding incidental beneficiaries of a contract are not third party beneficiaries which parties must intend to primarily and directly benefit). As the *Kassin* court determined, "[c]ertainly, it cannot be said that [in its role as a broker] the contract was intended to primarily and directly benefit" the *Kassin* appellants. *Kassin* at 325. In this case, like *Kassin*, Keyes

admits that it merely served as a "transaction broker" to the underlying real transaction [Appendix Tab 14, DE 14 at 8]. Contrary to Keyes's position, the District Court was thus correct in relying on *Kassin. Kassin* is controlling because the Arbitration Clause specifies it is to be construed under Florida law and, as stated above, federal law requires the Arbitration Clause be interpreted under state contract-law principles.

Keyes similarly tries to distinguish *Century Land Development, L.P., et al., v. F.F.L. Development, L.L.C.*, Case No. 07-14377-CIV-MOORE (S.D. Fl. Feb. 19, 2008) [DE 23] because the court purportedly provided "no information as to the presence of absence of any other contractual provisions purporting to grant rights to broker [sic]". Like *Kassin*, though, *Century Land Development* is on point.

The court in *Century Land Development* construed Florida law and involved an arbitration provision almost identical to one at issue in this case. The plaintiff in *Century Land Development* sued a real estate broker and others for certain alleged misrepresentations concerning the value of a parcel of property for a multiunit development [DE 23 at 5]. As in this case, the real estate broker in *Century Land Development* was not a party to the sales transaction, but nonetheless moved to compel arbitration based on the underlying sales contract signed between

the *Century Land Development* plaintiffs and the defendant seller. The arbitration

clause in all material respects was identical the one at issue here and in *Kassin*; the

*Century Land Development* clause read:

> [16] (b) All other disputes: **Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration [sic] In the county where the Property is located.** The arbitrator may not alter the Contract terms or award any remedy not provided for in the Contract. The award will be based on the greater weight of the evidence and will state findings of fact and the contractual authority on which it is based. If the parties agree to use discovery, it will be in accordance with the Florida Rules of Civil Procedure and the arbitrator will resolve all discovery-related disputes. **Any disputes with a real estate licensee named in Paragraph 17 will be submitted to arbitration only if the licensee's broker consents in writing to become a party to the proceeding.** This clause will survive closing.

[DE 23 at 6] (emphasis added) [*compare* Appendix Tab 1, DE 1 (Ex. A) at ¶ 16].

In *Century Land Development,* the court found that the above-quoted clause was

very similar to the one examined in *Kassin,* and held that:

> [L]ike *Kassin* the defendant-broker is attempting to invoke an arbitration provision from a contract she did not principally execute. Defendant Weits did sign the contract, but as a broker, not as a buyer or seller. The contract exists to benefit and protect the buyer and seller of the parcel, not the real estate agents; the agent's principal contract would be their listing agreements or some equivalent entered into with either the buyer or seller. In addition, this Court agrees with the *Kassin* Court's reading of the arbitration provision, which holds that the provision simply states that a broker cannot be forced into arbitration without their consent, and does not give the broker an independent right to compel arbitration.

[DE 23 at 7] (citations omitted). The *Century Land Development* court then concluded: "Therefore, Defendants are not in a position, as mere brokers to a sales contract, to invoke the arbitration provision; moreover, the provision itself just prevents brokers from being compelled to arbitrate against their will" [*Id.*]

  **2.**  **Keyes Does Not Satisfy the Requirements for Status as a Third Party Beneficiary.**  The text of the Arbitration Clause notwithstanding, assuming again for the sake of argument that Keyes's status as a third-party-beneficiary was relevant Keyes does not meet the test for third party beneficiaries under Florida law.

  In order to be a third party beneficiary, Keyes must demonstrate that the contracting parties specifically, clearly and primarily intended to confer on Keyes third party beneficiary status sufficient enough to endow it with the right to compel arbitration. *See Rebman v. Follett Higher Educ. Group, Inc.*, 248 F.R.D. 624, 630 (M.D. Fla. 2008) (citations omitted); *Hunt Ridge at Tall Pines Inc. v. Hall*, 766 So. 2d 399, 400 (Fla. 2d DCA 2000) (finding a "party is an intended beneficiary only if the parties clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong"). As evident in *Kassin* and *Century Land Development*, "Florida law looks to 'nature or terms of a contract' to find the parties' clear or manifest intent

that it 'be for the benefit of a third party.'" *Florida Power & Light Co. v. Road Rock, Inc.*, 920 So.2d 201, 203 (Fla. 4th DCA 2006) (citations omitted). As the court found in *Networkip, LLC v. Spread Enterprises, Inc.* 922 So.2d 355, 358 (Fla. 3d DCA 2006), the fact that a person may derive some benefit from a contract does not indicate she or he is an intended beneficiary: "The intention of the contracting parties, gleaned from the contract itself, is determinative. It is not enough that the ... services ultimately rendered [under the contract] accrue to the [third party]." *Networkip,* 922 So.2d at 358 (citing *City of Tampa v. Thornton-Tomasetti, P.C.*, 646 So.2d 279, 282-83 (Fla. 2d DCA 1994)) (citation omitted). In other words, contrary to what Keyes suggests, "it is not enough that some benefit incidental to the performance of the contract may accrue to him." *McPheeters v. McGinn, Smith and Co., Inc.* 953 F.2d 771, 773 (2d Cir. 1992).

Here, the obvious intent of the Purchase Contract is specifically, clearly and primarily to convey real estate to Peters costing Peters roughly $280,000 and to protect the Buyer and Seller in their real estate transaction, not primarily to confer the benefit of a $499 "arbitration brokerage fee" on Keyes. Receipt of Keyes's commission is incidental to performance of the contract. *See McGinn,* 953 F.2d at 773 (finding broker incidental beneficiary when parties entered contract for their mutual benefit rather than to confer a benefit on broker). The Purchase Contract

envisions Keyes had a separate agreement for its commission [Appendix Tab 27, DE 27 at 5; Appendix Tab 1, DE 1 (Ex. C) (Buyer's Disclosure)]; *cf. Chastain v. Carroll,* 307 So.2d 491, 492 (Fla. 2d DCA 1975) (noting real estate commission arrangements were separate from contracts for sale of property) (citing *Keyes Co. v. Moscarella*, 223 So.2d 83 (Fla. 3d DCA 1969).

As was the case in *Kassin* and *Century Land Development,* the role of Keyes as expressed in the terms of the Purchase Contract is limited to its role as transaction broker [Appendix Tab 27, DE 27 at 1-2,[6] 5; Appellant's Br. 14-15]. Keyes has admitted this fact [Appendix Tab 14, DE 14 at 8] and not argued otherwise. Furthermore, the unambiguous language of the Arbitration Clause in

---

[6] The District Court listed the following rights of Keyes under the Purchase Contract:

(1) if Peters defaults, The Keyes Company shall receive one-half of Peters's deposit up to the full amount of the brokerage fees; (2) The Keyes Company may place a lien on the property to ensure payment for its brokerage services; (3) Peters and Bank United [the Seller] release The Keyes Company from all liability arising from (a) Peters's or Bank United's misstatements or failure to perform contractual obligations and (b) The Keyes Company's performance of any service, at the request of Peters or Bank United, other than brokerage services; (4) The Keyes Company's liability for damages is limited to its brokerage commission; (5) Peters, Bank United, and The Keyes Company are bound by the Purchase Contract and (6) except for brokerage agreements, no prior agreements bind Peters, Bank United, and The Keyes Company.

[Appendix Tab 27, DE 27 at 2] (internal citations omitted).

this case only specifies that Buyer and Seller as contracting parties agree that *their* disputes will be submitted to binding arbitration. Under these circumstances, *Kassin*, *Century Land Development*, and Florida law instruct that Keyes cannot demonstrate that Peters and the Seller specifically, clearly, and primarily intended to confer on Keyes third party beneficiary status sufficient to endow it with the contractual right to compel a contracting party to arbitrate.

## VI.   CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's April 21, 2010 Order [DE 27] denying Appellant's motion to compel arbitration and to stay [DE 14].

Dated: August 6, 2010

<div style="margin-left:40%">

Respectfully submitted,

**Farmer, Jaffe, Weissing,
Edwards, Fistos & Lehrman, P.L.**
*Counsel for Plaintiff - Appellee*
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
(954) 524-2820
(954) 524-2822 fax

By:   /s/ Mark S. Fistos
      Mark S. Fistos
      Florida Bar No. 909191
      mark@pathtojustice.com

</div>

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), that there are 5,770 words in this brief.

/s/ Mark S. Fistos
Mark S. Fistos
Florida Bar No. 909191

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been provided this 6th day of August 2010 via U.S. Mail to:

Bruce D. Friedlander
bdf@friedlanderkamelhair.com
**Friedlander & Kamelhair, P.L.**
3300 N. University Drive, Suite 4
Coral Springs, FL 33065
*Attorneys for Defendant-Appellant*

John C. Hanson, II
jhanson@barthet.com
**The Barthet Firm**
200 S. Biscayne Blvd., Suite 1800
Miami, FL 33131
*Appellate Counsel for Defendant-Appellant*

By:     /s/ Mark S. Fistos
Mark S. Fistos
Florida Bar No. 909191